UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARKET STREET PROPERTIES, LLC, : <br> 525 Market Street - Suite 200 : <br> Camden, NJ 08690 : <br>                 Plaintiff, : <br> : <br> v. : <br> : <br> FARMERS MUTUAL FIRE INSURANCE : <br> COMPANY OF SALEM COUNTY : <br> 1 Avenue of the Arts, Suite B : <br> Wilmington, DE 19801 : <br> : <br>                 Defendant. : <br> : | Civil Action No.: <br><br><br><br> JURY TRIAL DEMANDED |

**COMPLAINT**

AND NOW COMES Plaintiff, Market Street Properties, LLC ("Plaintiff" or "Market Street"), by and through its attorneys, Flaster Greenberg PC, and files this Complaint against Defendant, Farmers Mutual Fire Insurance Company of Salem County ("Farmers Mutual"), and in support thereof, alleges as follows:

**Brief Statement of the Case**

1.   This matter involves a determination of whether insurance coverage is provided for a roof collapse under a property insurance policy that Defendant, Farmers Mutual, issued to Plaintiff, Market Street.

2.   More specifically, this Court is asked to decide whether, under New Jersey law, the general policy exclusion for wear and tear applies to override the Supplemental Coverage for Collapse provided under the insurance policy. As set forth below, the Superior Court of New Jersey has issued unpublished opinions strongly supporting that the general exclusion for wear

and tear does not exclude from coverage collapse losses that fall within the specific coverage grant in the Supplemental Coverage for Collapse.

3. Market Street seeks a judgment against Farmers Mutual for monetary damages because Farmers Mutual breached the insurance contract by denying coverage for the roof collapse.

## The Parties

4. Plaintiff, Market Street Properties, LLC, is a limited liability company incorporated in the State of New Jersey with its principal place of business located at 525 Market Street, Suite 200, Camden, New Jersey. The members of the LLC are all individuals who are not citizens of the State of Delaware.

5. Defendant, Farmers Mutual Fire Insurance Company of Salem County, upon information and belief, is incorporated in the State of Delaware with a principal place of business located at 1 Avenue of the Arts, Suite B, Wilmington, DE 19801.

## Jurisdiction and Venue

6. This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332, as there is diversity of citizenship between Plaintiff, Market Street, and Defendant, Farmers Mutual, and the amount in controversy exceeds $75,000.

7. Venue lies in this District in accordance with 28 U.S.C. §§ 1391(b)(2) and (c)(2) because the events giving rise to the insurance claim occurred in this District, the insured property is located within this District, and Farmers Mutual does business within this District, including soliciting and writing of insurance policies to insureds such as Market Street.

**The Farmers Mutual Policy**

8. Farmers Mutual issued a renewal insurance policy, Policy No. BONJO07174, to named insured, Market Street Properties, LLC, effective September 6, 2024, to September 6, 2025 ("the Policy"). (A true and correct copy of the Farmers Mutual Policy is attached as Exhibit "A").

9. As reflected on the Businessowners Coverage Schedule, the Policy provided, among other coverages, lessor's risk property coverage for the insured location, 525 Market Street, Suite 200, Camden, New Jersey, with a Building Replacement Cost Limit of $2,160,000, including loss of income. *Id.*

10. In Part I. C. "Losses Insured," the Policy states:

> **GENERAL CAUSE OF LOSS CONDITIONS – COVERAGES A, B, C**
>
> The various causes of loss cover fortuitous direct physical loss not otherwise excluded or limited. Loss – *covered loss* – means **fortuitous direct physical damage to or destruction of covered property by a covered cause of loss** …. Covered cause of loss means a cause of loss contemplated by the following to the extent it is applicable to the subject covered property.
>
> ****
>
> Direct physical loss does not include or mean any sort of consequential loss, loss of use, or loss of utility.
>
> ****
>
> **1.    BASIC PLUS COVERAGE**
>
> If the Declarations shows that Basic Plus Coverage applies, property covered by this policy is insured against fortuitous direct physical loss as follows:
>
> **Coverage A**
>
> Property included in Coverage A [buildings] is insured against fortuitous direct physical loss, subject to all applicable provisions in this policy.
>
> ****

3

*Id.*.

11. Part I. B. "Supplemental Coverages" in the Policy provide numerous supplemental coverages. Specifically, as to "Collapse", the Policy states:

> The following Supplemental Coverages do not extend or modify any provisions of this policy except to the extent specifically described. Limits shown for the following Supplemental Coverages are additional amounts of insurance unless otherwise indicated.
>
> **5.  COLLAPSE COVERAGE**
>
> A.  Coverage is extended to cover the *collapse* of a building or any structural part of a building that ensues only as a consequence of the following:
>
> 1.  Any cause of loss provided for in Coverage B under Basic Plus Coverage. Under this coverage, these causes of loss apply to both covered buildings and business personal property.
> 2.  Hidden decay, unless such decay is known to an *insured* prior to *collapse*.
> 3.  Hidden insect or vermin damage, unless such damage is known to an insured prior to collapse.
> 4.  Weight of contents, equipment, animals, or people.
> 5.  Weight of rain that collects on a roof.
> 6.  Use of defective material or methods in construction, remodeling, renovation or repair.
>
> B.  For the preceding Items A.2 through A.6, *we* do not cover the following unless the loss is a direct result of the *collapse* of a building or a structural part of a building: antennas, including their lead-in wires, masts, or towers; awnings; beach or diving platforms and related equipment or structures; decks; docks, piers or wharves; downspouts or gutters; fences; outdoor swimming pools; paved surfaces of any sort (including but not limited to, bridges, driveways, parking lots, patios, pavements, roads, walks); retaining walls; yard fixtures.
>
> ****

*Id*.

12. In the "Common Glossary – Parts I and II" of the Policy, "Collapse" is defined as:

Abrupt falling down or caving in of a building or structural parts of a building.

*Collapse* does not include a building or part of a building that is:

1. In danger of falling down or caving in; or

2. Standing, even if it has separated from another part of the building.

*Collapse* does not include "bulging, cracking, expanding, settling, or shrinking.

*Id*.

13. In the general exclusions section, the Policy also provides in relevant part:

**PART I E – LOSSES NOT INSURED**

We do not insure loss consisting of, or directly or indirectly caused by, one or more of the following, except to the extent otherwise specifically provided for in this policy. Such loss is not insured whether or not an otherwise covered cause of loss contributes concurrently or otherwise to the loss.

****

**14. WEAR, TEAR, AND OTHER SPECIFIED CAUSES OF LOSS  EXCLUSIONS**

**A.** Wear and tear; birds, domestic animals, insects, raccoons, rodents or vermin. Contamination or pollution including, but not limited to: (1) the discharge, dispersal, emission, escape, migration, release, or seepage *of pollutants;* (2) the costs associated with enforcement of any governmental directive, law or ordinance which requires *you* or any others to clean up, contain, detoxify, monitor, neutralize, remove, test for, or in any way respond to *pollutants,* asbestos, *fungi,* mold or lead contamination, or to assess the effects of pollutants, asbestos, fungi, mold, or lead contamination. …Corrosion; decay or deterioration; deficiency, error, or omission in design, materials, plans, or workmanship; disease; dry or wet rot; *fungi,* mold, spores, mildew, bacterium, or other natural growth; inherent vice (a customary characteristic of the

5

property); latent defect (an original condition or fault leading to loss); mechanical breakdown; rust.

*Id*.

## The Property Loss – Roof Collapse

14. On July 14, 2025, within the effective dates of the Policy, a roof collapse occurred at the insured location in the rear of the building. Market Street immediately notified Farmers Mutual of the loss. Market Street paid approximately $250,000 to make temporary repairs and permanently fix the roof.

15. That same day, on July 14, 2025, Market Street had an engineer with Structural Design Associates, Inc. ("SDA") inspect the roof collapse both to determine the cause of the collapse and to evaluate whether it was safe for individuals to enter the building, which included a Camden County Board of Social Services Office, H&R Block Office, and a second floor office.

16. SDA determined that the building was structurally sound and advised Market Street to construct an interior plywood construction door to prevent anyone from entering the rear of the building. SDA also determined that the roof collapsed due to hidden decay of the interior timber frame truss that lost bearing at the masonry pier, causing the roof rafters on each side of the truss to collapse into the building.

17. On July 16, 2025, Farmers Mutual acknowledged receipt of the loss by letter and advised Market Street that it would conduct an inspection of the property "to confirm the cause of loss."  Farmers Mutual advised that it hired Forensic Consultants of North America, Inc. to conduct the inspection.

18. On August 11, 2025, Farmers Mutual advised Market Street by letter that the claim was denied and that coverage for the roof collapse would not be provided under the Policy

("Denial Letter"). (A true and correct copy of Farmers Mutual's August 11, 2025, letter is attached as Exhibit "B").

19. Farmers Mutual stated in its Denial Letter as to the alleged cause of the roof collapse as follows:

> The investigation conducted by Farmers of Salem has revealed that the subject loss was the result of wear and tear and therefore, not a covered cause of loss. Particularly, the brick walls and truss support columns were deteriorated because of moisture intrusion, and the roof had at least five (5) layers of various roofing material where there should have been only a maximum of two (2) layers. It was ultimately found that the roof structure failed due to a combination of the poor condition of brick walls and support column in in conjunction with excessive loads.

*Id*.

20. Then, Farmers Mutual stated in its Denial Letter that the loss was excluded under the Policy's wear and tear exclusion, and stated as follows:

> Therefore, coverage is denied for your claim due to the exclusion for wear and tear; decay or deterioration; deficiency, error, or omission in design, materials, plans or workmanship; dry or wet rot; fungi, mold, spores, mildew, bacterium or other natural growth; inherent vice (a customary characteristic of the property); latent defect (an original condition or fault leading to loss); mechanical breakdown; and rust.

*Id*.

21. However, despite acknowledging in its coverage Denial Letter that the loss involved a "roof collapse at the rear portion of your [the insured's] commercial building" and citing the Policy terms for the Supplemental Coverage for Collapse, Farmers Mutual completely ignored the fact that the Policy specifically and expressly provides coverage for "Collapse." *Id*.

22. In fact, the Supplemental Coverage for Collapse provided in the Policy, as cited above, expressly extends coverage, in relevant part, to the two causes of loss that Farmers Mutual alleged: deterioration and defective construction or repair methods.

7

23. Farmers Mutual first alleged in its Denial Letter that the collapse occurred because "the brick walls and truss support columns were deteriorated because of moisture intrusion." *Id.* The Supplemental Coverage for Collapse expressly provides, in relevant part, that "Coverage is extended to cover the collapse of a building or any structural part of a building that ensues only as a consequence of … Hidden decay, unless such decay is known to an *insured* prior to *collapse.*" Thus, the loss is covered under the Supplemental Coverage for Collapse. *Romano v. Metropolitan Prop. & Cas. Ins. Co.,* No. A-3525-11T1, 2014 WL 3537896, at *7, N.5 (N.J. Super. 2014) (Unpub. Op.), *cert. den.*, 220 N.J. 572 (2015) ("The coverage for collapse from 'hidden decay' would be illusory if the deterioration exclusion applied, since decay is synonymous with deterioration.").

24. Farmers Mutual has never provided any evidence whatsoever that the decay/deterioration was not hidden, *i.e.*, unknown to Market Street. In fact, as set forth in the relevant paragraphs below, Farmers Mutual inspected the building's roof twice before the loss and never indicated the presence of deterioration/decay and/or wear and tear of the roof.

25. Farmers Mutual also alleged in its Denial Letter that the collapse occurred because "the roof had at least five (5) layers of various roofing material where there should have been only a maximum of two (2) layers. It was ultimately found that the roof structure failed due to a combination of the poor condition of brick walls and support column in conjunction with excessive loads." (*See* Ex. B). The Supplemental Coverage for Collapse also expressly provides that "Coverage is extended to cover the collapse of a building or any structural part of a building that ensues only as a consequence of … Use of defective material or methods in construction, remodeling, renovation or repair." If, in fact, multiple layers of roofing shingles were present on

8

the roof, that too falls under the Collapse coverage as it would constitute a collapse that was a consequence of the use of defective methods in construction or repair.

26. Thus, the loss is covered under the Supplemental Coverage for Collapse.

27. Therefore, even assuming the collapse was caused by the two conditions referenced by Farmers Mutual in its Denial Letter – the hidden deterioration of the brick walls and truss support and/or the defective methods in construction or repair in layering shingles – the roof collapse is covered under the Policy's Supplemental Coverage for Collapse.

28. Even though Farmers Mutual's identified alleged causes of the loss show the loss is covered under the Policy's Supplemental Coverage for Collapse, Farmers Mutual denied coverage by shoehorning the collapse into a general Policy exclusion for "Wear, Tear, and Other Specified Causes of Loss Exclusion." *Id.*

29. In its Denial Letter, however, Farmers Mutual did not dispute that the loss at the insured property was a "collapse" as defined in the Policy. *Id.*

30. On October 28, 2025, Market Street challenged Farmers Mutual's coverage denial for the collapse, by letter sent through its counsel, explaining that the Policy's Supplemental Coverage for Collapse provided coverage for the roof collapse. (A true and correct copy of Market Street's October 28, 2025, letter is attached as Exhibit "C").

31. In that letter, Market Street advised Farmers Mutual that: the loss was caused by a roof collapse from hidden decay as determined by its engineer; Farmers Mutual's finding that the loss was caused by deterioration of the brick walls and truss support column supported that the collapse was caused by hidden decay, and, therefore, fell within the Supplemental Coverage for Collapse; that the loss did not occur from wear and tear; and the exclusion for wear and tear did not apply to exclude coverage. *Id.*

9

32. Specific to the wear and tear exclusion, Market Street advised Farmers Mutual that it could not simply choose to recharacterize the causes of loss it cited as "wear and tear" to attempt to fit the loss within the Policy exclusion to avoid having to pay the claim. *Id*.

33. In its October 28, 2025, letter, Market Street further advised Farmers Mutual that: New Jersey law rejects the argument that the wear and tear exclusion applies where an otherwise covered collapse was caused by hidden decay. *Id.* Market Street further advised that the preamble to the wear and tear exclusion which states "We do not insure loss consisting of, or directly or indirectly caused by, one or more of the following, *except to the extent otherwise specifically provided for in this policy*" evidences that the exclusion is not meant to apply where, as in this case, collapse coverage is otherwise specifically provided for in the Policy. *Id.*

34. On November 17, 2025, Farmers Mutual responded by letter, refusing to reconsider its claim denial and again asserting that the wear and tear exclusion applied to preclude coverage for the roof collapse. In so doing, Farmers Mutual cited the anti-concurrent causation language in the preamble to the wear and tear exclusion which states:

> We do not insure loss consisting of, or directly or indirectly caused by, one or more of the following [exclusions], except to the extent otherwise specifically provided for in this policy. Such loss is not insured whether or not an otherwise covered cause of loss contributes concurrently or otherwise to the loss.

35. Farmers Mutual asserted that, even if the Supplemental Coverage for Collapse may apply, the anti-concurrent causation language operates to exclude the loss with "wear and tear being at least a partial cause in the collapse." (A true and correct copy of Farmers Mutual's November 17, 2025, letter is attached as Exhibit "D").

36. However, again, the preamble to the wear and tear exclusion specifically states that the exclusions apply, including the wear and tear exclusion, "except to the extent otherwise

specifically provided for in this policy." When, as in this case, the Policy otherwise specifically provides coverage for a collapse caused by hidden decay and/or defective methods in construction or repair, the anti-concurrent causation language in the preamble does not apply.

37. In its November 17, 2025, letter, Farmers Mutual for the first time stated that the Policy definition of collapse includes "the term abrupt as a qualifier." Farmers Mutual stated: "The existence of wear and tear in the form of deteriorated brick walls and a deteriorated support column, and such wear and tear being at least a partial cause in the collapse, runs directly contrary to the claim that the collapse was abrupt." *Id*.

38. However, as Market Street and its engineer, SDA, observed, and as Farmers Mutual's inspector observed as well, the roof did, in fact, abruptly fall down and the roof trusses caved into the building.

39. The evidence shows that the roof was fully intact and in place until the moment when it abruptly collapsed.

40. Farmers Mutual's claim that alleged "wear and tear" may have existed within the brick walls or support column – which Market Street denies existed and/or was the cause of the loss – does not negate the abrupt nature of the roof collapse.

41. On December 4, 2025, Market Street's counsel sent another letter to Farmers Mutual to bring attention to a particularly relevant case decided by the Superior Court of New Jersey which rejected Farmers Mutual's coverage position. (A true and correct copy of Market Street's December 4, 2025, letter is attached as Exhibit "E").

42. As Market Street advised Farmers Mutual, the Superior Court of New Jersey in an unpublished opinion addressed the interplay between the wear and tear exclusion and the Supplemental Coverage for Collapse. *Id.* The Superior Court rejected the exact argument

Farmers Mutual makes in this case based on identical anti-concurrent causation language. *Parko Properties, LLC v. Mercer Ins. Co. of New Jersey*, No. A-4137-17T2, 2020 WL 6799137, at *7 (N.J. Super. 2020) (Unpub. Op.). The Court stated: "Reasonably construed, the 'except to the extent' [otherwise specifically provided for in this policy] clause means that the 'Losses Not Insured' provisions [the exclusions] do not override the collapse coverage the policy specifically provides in the preceding 'Supplemental Coverages' part of the policy." *Id.*

43. The *Parko* holding is consistent with the weight of authority throughout the nation.

44. On January 20, 2026, Farmers Mutual responded to Market Street's December 4, 2025, letter, again asserting that the anti-concurrent causation clause applied, and thus, the wear and tear exclusion precluded coverage. Farmers Mutual also summarily dismissed the well-reasoned analysis set forth in *Parko Properties* as non-binding and not applicable. (A true and correct copy of Farmers Mutual's January 20, 2026, letter is attached as Exhibit "F").

45. In that same letter, Farmers Mutual raised for the first time, albeit in a confusing and factually inaccurate way, a question of whether the decay/deterioration that caused the roof collapse was "hidden." *Id*.

46. Farmers Mutual cited no evidence whatsoever in its letter or otherwise to show that the decay of the interior timber frame truss that lost bearing at the masonry pier and/or the brick walls was anything other than hidden.

47. Neither Farmers Mutual nor its inspector, who inspected the roof collapse back in July 2025, provided any information or evidence of any sort to Market Street to indicate that the deterioration/decay of the brick walls and support column were visible or should have been known to Market Street.

48. The area of the roof that collapsed has an open, exposed roof structure such that the roof components are/were fully visible. Farmers Mutual inspected the property and the roof twice before the collapse.

49. In or around March 2025, only four months before the roof collapse, Farmers Mutual's representative inspected the property and roof for an unrelated insurance claim.

50. Upon information and belief, the inspector did not document signs of deterioration/decay, wear and tear, and/or structural stress to any part of the roof or its components in March 2025.

51. Furthermore, before the policy placement on September 6, 2024, ten months before the roof collapse, Farmers Mutual had its inspector examine the property and roof to assess the risk for underwriting purposes.

52. Upon information and belief, the inspector did not see signs of deterioration/decay, wear and tear, and/or structural stress to any part of the roof or its components. Rather, Farmers Mutual approved the risk, wrote the Policy, and accepted Market Street's premium payments.

53. In addition, the portion of the building where the collapse occurred is occupied and used daily by Camden County Board of Social Services, and even though the trusses and roof were open and exposed, no observation, concern, or complaints were ever made by the individuals occupying that area to Market Street or anyone else.

54. Therefore, any claim by Farmers Mutual that Market Street could have observed or knew of any hidden decay is refuted by the evidence.

55. Coverage is provided under the Policy for the roof collapse under the Policy's Supplemental Coverage for Collapse. The Policy language makes clear that the roof collapse is

covered, even under the causes of loss asserted by Farmers Mutual. Therefore, Farmers Mutual must provide coverage and pay the claim.

56. Market Street reasonably expected that the Farmers Mutual Policy, which specifically included Supplemental Coverage for Collapse from hidden decay and defective methods in construction or repair, would actually provide coverage for this roof collapse.

57. The Policy must be construed to give effect to all terms and provisions and may not be construed in a manner that renders any policy term and/or coverage illusory.

58. To interpret the Policy as Farmers Mutual does, *i.e.*, that the roof collapse is excluded under the wear and tear exclusion, would make the Supplemental Coverage for Collapse illusory.

59. An insurer may not simply ascribe wear and tear as a partial cause of a collapse from hidden decay and/or the alleged use of defective methods in construction or repair to invoke the exclusion and avoid having to pay the claim.

60. While Market Street contends the Policy clearly provides coverage, at a minimum, there is an ambiguity in the policy's construction between the Supplemental Coverage for Collapse – which must be construed broadly as a coverage grant -- and the wear and tear exclusion -- which must be construed narrowly. That ambiguity must be construed in Market Street's favor and in favor of coverage.

## COUNT I – BREACH OF CONTRACT

61. Paragraphs 1 through 60 of Plaintiff's Complaint are incorporated by reference.

62. Farmers Mutual issued the Policy to Market Street, effective September 6, 2024, to September 6, 2025, which included, among other coverages, lessor's risk property coverage

for the insured location, 525 Market Street, Suite 200, Camden, New Jersey, with a Building Replacement Cost Limit of $2,160,000, including loss of income.

63. The insurance contract was in effect on July 14, 2025, the date of the roof collapse at the insured property.

64. The Policy provides, among other things, Supplemental Coverage for Collapse, stating: "Coverage is extended to cover the collapse of a building or any structural part of a building that ensues only as a consequence of … Hidden decay, unless such decay is known to an *insured* prior to *collapse* …[or] Use of defective material or methods in construction, remodeling, renovation or repair." *Id.* The roof collapse falls within this coverage.

65. Market Street provided prompt and adequate notice of the loss, cooperated in all aspects of Farmers Mutual's investigation and inspection, and complied with all terms, conditions, and provisions in the Policy.

66. No exclusions in the Policy apply, including the wear and tear exclusion, to preclude coverage for the roof collapse.

67. Farmers Mutual had a contractual duty to accept coverage for the roof collapse claim under the Policy and pay Market Street for the temporary and permanent repairs made to the roof which totals approximately $250,000 and all other costs associated with the loss.

68. All conditions precedent to coverage have been fulfilled or waived.

69. Farmers Mutual breached the insurance contract by denying coverage for the roof collapse claim.

70. Market Street has suffered substantial damages as a result of Farmers Mutual's breach of the insurance contract, including direct and consequential damages.

WHEREFORE, Plaintiff, Market Street Properties, LLC, Inc., requests that this Court enter judgment in its favor and against Defendant, Farmers Mutual Fire Insurance Company of Salem County, in an amount in excess of $75,000, plus all direct and consequential damages and all other costs associated with the loss, plus interest, costs, and such other relief this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Market Street hereby demands a trial by jury of issues so triable.

## CERTIFICATION PURSUANT TO LOCAL RULE 11.2

I certify that, to the best of my knowledge, this matter is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

## DESIGNATION OF TRIAL COUNSEL

Jay M. Levin, Esquire, will be trial counsel for Plaintiff Market Street Properties, LLC.

Respectfully submitted,

**FLASTER GREENBERG P.C.**

By:  */s/ Jay M. Levin*
Jay M. Levin
100 Front Street, Suite 100
Conshohocken, PA 19428
Telephone: (215) 546-4842
Fax: (215) 576-8188
Email: jay.levin@flastergreenberg.com

*Attorney for Plaintiff*
*Market Street Properties, LLC*

Date: February 27, 2026